# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRACE LAPHAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 14-4063 |
| v. | : | |
| | : | |
| SERGEANT WILLIAM HAINES, et al, | : | |
| | : | |
| Defendants. | : | |

**February 16, 2016**                                        **Anita B. Brody, J.**

## MEMORANDUM

Plaintiff Grace Laphan brings suit against Sergeant William Haines, Sergeant Michael Langdale, Chief David Montella (collectively, "the Officers"), John Burgy, and Upper Providence Township[1] for alleged violations of her civil rights under federal and Pennsylvania law. The Officers and Upper Provide Township move for summary judgment.[2] For the reasons stated below, I will grant their motion.

### I.    BACKGROUND

Laphan and Defendant John Burgy jointly owned a house at 375 South Ridley Creek Road, Media, PA. Burgy Dep. at 8, 19, ECF No. 42, Ex. K. In 2009, Laphan and Burgy ended their relationship, Burgy Dep. at 8, and Laphan filed a lawsuit in Pennsylvania state court to resolve the ownership and disposition of the house, Laphan Dep. at 27, ECF No. 42, Ex. L.

---

[1] Laphan initially also named Officer George Moore as a defendant, but the parties stipulated to dismiss all claims against Officer Moore with prejudice. ECF No. 24.

[2] Defendant John Burgy does not move for summary judgment. Therefore, I cannot dismiss this action in its entirety; the claims against Burgy will proceed.

On June 20, 2012, the Court of Common Pleas of Delaware County entered an order (the "June Order") in the parties' civil litigation over the house. In relevant part, the June Order states that:

> a)      Defendant John W. Burgy, shall vacate the premises immediately;
>
>                    * * *
>
> d)      Defendant John W. Burgy, shall, within ten (10) days from the date of this Order, personally remove and/or personally pay for removal of debris, materials, supplies and equipment which he has allowed to accumulate and remain on the premises:
>
> e)      Defendant, John W. Burgy, shall endorse, and turn over to Plaintiff, Grace M. Laphan, within ten (10) days from the date of this Order, the insurance proceeds check in the amount of [$35,516.03], so that it may be used to apply towards the mortgage on the property, to the benefit of both parties hereto;
>
> f)      The property shall be listed for sale immediately . . . ; and
>
> g)      Plaintiff, Grace M. Laphan, shall be granted sole access to the property to prepare it for sale as she deems appropriate.

June Order, ECF No. 40, Ex. G. On June 28, 2012, Laphan provided a copy of this order to Sergeant Michael Langdale of the Upper Providence Police Department. Laphan Dep. at 51-52; Langdale Dep. at 12-13, ECF No. 40, Ex. C. She informed him that Burgy had vacated the premises except for the garage. Laphan Dep. at 51-52; *see also* Burgy Dep. at 30.

Among the items still remaining at the house ten days after the June Order was entered were a 1966 Ford Mustang, which belonged to Burgy, and a Ford F-350 truck, which was owned by a friend's company and used for parts. *See* Laphan Dep. at 36-37; Burgy Dep. at 57; Haines Narrative, ECF No. 40, Ex. D. Approximately ten days after the June Order was entered, Laphan had these two vehicles towed from the house to a storage facility. Laphan Dep. at 40-41.

On the morning of July 6, 2012, Burgy called the police and claimed that Laphan was illegally removing items from the property. Officer George Moore was dispatched to the house

and found Laphan and two friends loading various items into a U-Haul and cleaning out the garage. *See* Haines Narrative; Laphan Dep. at 53. Officer Moore told Burgy what he had found and informed Burgy of the June Order, but Burgy did not believe that Laphan had the authority to remove his property. *See* Haines Narrative. Sergeant William Haines then called Burgy and advised him that, under the June Order, he was evicted from the house and Laphan was authorized to prepare the house for sale. *See id.* Burgy told the officer that the June Order was being appealed, but was advised that the police had no record of the appeal. *See id.*; Burgy Dep. at 35. Later in the evening of July 6, 2012, Burgy came to the police headquarters and produced additional paperwork regarding the house and his appeal of the June Order. *See* Haines Narrative; Burgy Dep. at 36. Again, he was told that the police only had the June Order on file and that this order evicted him and gave Laphan sole authority to clear the property for sale. *See* Haines Narrative.

At 8:00 p.m. on July 6, 2012, Burgy called the police to the house and reported that a side window to the garage had been broken and that the Mustang and Ford F-350 were missing. *Id.*; Haines Dep. at 6-8, ECF No. 42, Ex. H. Sergeant Haines, who responded to the call, contacted Laphan. She admitted that she had the vehicles removed in order to clear the property for sale. Haines Narrative; Haines Dep. at 8; Laphan Dep. at 55. Sergeant Haines contacted Assistant District Attorney ("ADA") Chris DiRosato, who, after reviewing the June Order and appeal request, indicated that he was "confused with the orders." Haines Narrative. According to Sergeant Haines's notes, ADA DiRosato believed the vehicles belonged to the title holder, but he also saw "where the order allow[ed] [Laphan] to clear the property for sale." *Id.* In his view, this meant that "she would have to safeguard the vehicle[s], which she said she had done." *Id.* The ADA advised both parties to stay away from the house and consult their attorneys. *Id.* Sergeant

Haines reported the ADA's advice to Burgy, and left a message for Laphan. *Id.* The following day, July 7, 2012, Sergeant Haines left a second message for Laphan, telling her to return the vehicles or safeguard them. *Id.*; *see also* Haines Dep. at 18-19. At this point, Chief David Montella was apprised of the situation. *See* Haines Dep. at 19.

Nine days later, on July 16, 2012, Burgy spoke to Chief David Montella and told him that his vehicles still had not been returned despite repeated requests. Burgy Dep. at 64; Montella Dep. at 8, ECF No. 40, Ex. E. Chief Montella told Burgy to speak with the District Attorney's Office if he wanted to have Laphan charged. Montella Dep. at 44. Also on July 16, Sergeant Haines called Laphan and asked her to return the vehicles. She stated that she would only do so once Burgy returned her property and the insurance proceeds check. Haines Dep. at 55-56; Laphan Dep. at 59.

The following day, Burgy produced the title documents for the car and truck. Burgy Dep. at 65-66. Chief Montella spoke with an ADA, who authorized him to file charges against Laphan.[3] Chief Montella then instructed Sergeant Langdale to apply for an arrest warrant. The warrant application charged Laphan with theft by unlawful taking or disposition, receiving stolen property, and unauthorized use of an automobile. Police Criminal Complaint, ECF No. 40, Ex. F.[4] The accompanying Affidavit of Probable Cause (the "Affidavit"), prepared by Sergeant

---

[3] Chief Montella does not recall the name of the ADA he spoke to, but does remember that it was not ADA DiRosato. Montella Dep. at 38.

[4] The crime of theft by unlawful taking or disposition, under Pennsylvania law, requires that an individual "unlawfully take[], or exercise[] unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa. C.S. § 3921(a).

A person is guilty of receiving stolen property in Pennsylvania "if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa. C.S. § 3925(a).

A person is guilty of unauthorized use of an automobile, under 18 Pa. C.S. § 3928(a), "if he operates the automobile . . . without consent of the owner."

Langdale, recounted many of the interactions between Laphan, Burgy, and the police on July 6, July 7, and July 16. *See id.* Sergeant Langdale did not, however, mention the June Order or include it as an attachment to the Affidavit. *See id.*; Langdale Dep. at 11. Although Sergeant Langdale was aware of Sergeant Haines's notes and his conversation with ADA DiRosato, he did not have any discussions with Sergeant Haines regarding the preparation of the Affidavit. Langdale Dep. at 14; Haines Dep. at 31. Chief Montella did not review the Affidavit. Montella Dep. at 37.

Based on the warrant application and Affidavit, the magisterial district judge issued an arrest warrant. Laphan, accompanied by her attorney, turned herself in and was given a video pre-arraignment hearing that same day, after which she was released on her own recognizance. Laphan Dep. at 28-29. The vehicles were returned to Burgy after Laphan's arrest. Laphan Dep. at 45. At a preliminary hearing before the same magisterial judge who issued the arrest warrant, the June Order was admitted as an exhibit, and addressed during testimony and argument. Tr. of Preliminary Hr'g at 8-13, 15, 23-25, ECF No. 42, Ex. J. The judge concluded that the state had "technically made their case out." *Id.* at 26-27. He found that the state had established its "prima facie case" because "the cars [were] being held improperly, and they weren't returned until after the[] charges were filed." *Id.* at 27. As such, he held Laphan over for trial.

Ultimately, after a bench trial, Laphan was found not guilty. The Court of Common Pleas expressed its frustration at the proceedings, noting that it was "beyond the understanding of th[e] Court as to why . . . an arrest warrant, which was approved by an ADA, was issued for Defendant [when] Defendant was acting within the scope of the court order." Verdict, ECF No. 40, Ex. B.

Laphan now brings this lawsuit alleging that the Officers, Burgy, and the Upper Providence Township violated her federal and state civil rights.

## II.    LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In resisting a motion for summary judgment, the nonmoving party may not "rely merely upon

bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III.  DISCUSSION

Laphan has six claims pending against Defendants: (1) Fourth Amendment false arrest against the Officers; (2) Fourth Amendment malicious prosecution against the Officers and Burgy; (3) state law malicious prosecution against the Officers and  Burgy[5]; (4) conspiracy to violate her federal and state civil rights against the Officers and Burgy; (5) intentional infliction of emotional distress against the Officers and Burgy; and (6) a *Monell* claim against Upper Provide Township for failure to train, supervise, and discipline the Officers.[6] The Officers and Upper Providence Township move for summary judgment on all claims against them.

### A.  False Arrest and Malicious Prosecution Claims

Laphan alleges Fourth Amendment false arrest and malicious prosecution claims, as well as a state law malicious prosecution claim, against the Officers. The absence of probable cause is an element of each of these three causes of action. *See Dowling v. City of Philadelphia*, 855 F.2d 136, 142 (3d Cir. 1988) (holding that the plaintiff had failed to establish "the existence of an essential element" of her false arrest claim where she could not show "that her arrest was not

---

[5] In Count I of her Amended Complaint, Laphan alleges Fourth Amendment malicious prosecution against the Officers. In Count V, she alleges "malicious prosecution under both 28 U.S.C. section 1983 and the Common Law of the State of Pennsylvania" against both the Officers and John Burgy. Am. Compl. ¶ 42, ECF No. 21. The federal malicious prosecution claim in Count V of the Amended Complaint is duplicative of Count I with respect to the Officers.

[6] Laphan also alleged, in a separate count of her complaint, that the Officers violated their "duty to investigate." Am. Compl. ¶¶ 34-36. This claim was dismissed with prejudice by stipulation of the parties. *See* ECF No. 32.

premised upon" probable cause); *see also McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (stating that a Fourth Amendment malicious prosecution claim requires proof that "the proceeding was initiated without probable cause"); *Kelley v. General Teamsters, Chauffers & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988) (stating that the lack of probable cause is an element of malicious prosecution under Pennsylvania law). Thus, to succeed on her false arrest and malicious prosecution claims, Laphan must show that there was no probable cause to arrest and prosecute her.

The crux of the parties' dispute over the existence of probable cause, or the lack thereof, is the June Order. Laphan argues that, had the June Order been included in Sergeant Langdale's Affidavit of Probable Cause, there would have been no probable cause to arrest her, and consequently, to prosecute her. The Officers contend that the exclusion of the June Order is immaterial to the probable cause calculus because it did not authorize Laphan to remove the vehicles and then refuse to return them to Burgy.

Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey*, 71 F.3d 480, 483 (3d Cir. 1995); *see also Kossler v. Crisanti*, 564 F.3d 181, 194-95 (3d Cir. 2009) (applying this standard to a federal malicious prosecution claim); *Hugee v. Pa. R. Co.*, 101 A.2d 740, 742 (Pa. 1954) (articulating a similar standard for probable cause in a state-law malicious prosecution claim). Generally, "the question of probable cause in a § 1983 damage suit is one for the jury," but "a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000) (internal quotation

marks omitted); *see also Kelley*, 544 A.2d at 941 (stating that, under Pennsylvania law, probable cause "may be submitted to the jury when facts material to the issue of probable cause are in controversy").

Viewing the facts in the light most favorable to Laphan, the Officers had probable cause to believe that she was at least committing the crimes of theft and receiving stolen property. The June Order, on its face, only authorized Laphan to prepare the house for sale. *See* June Order. At best, this provision allowed her to have the vehicles towed from the house. There is nothing in the June Order that permitted Laphan to do what she told Sergeant Haines she intended—i.e., to withhold the vehicles from Burgy until he turned over certain property and the insurance proceeds check. *See* Laphan Dep. at 59, 61-65; Haines Dep. at 55-56. While the June Order did instruct Burgy to endorse and turn over the insurance proceeds check to Laphan within ten days, it did not give her any right to use his property as collateral to ensure compliance.[7]

Moreover, the magisterial district judge held Laphan over for trial even after becoming aware of the June Order and hearing testimony and argument about whether it authorized her actions. He specifically concluded that the state had established a "prima facie case" because "the cars [were] being held improperly, and they weren't returned until after the[] charges were filed." Tr. of Preliminary Hr'g at 27. Federal and state courts have treated an unimpeached hold-over proceeding as weighty, though not conclusive, evidence of probable cause in both the false arrest and malicious prosecution contexts. *See Snell v. Duffy*, No. 02-3660, 2004 WL 62711, at *5 (E.D. Pa. Jan. 6, 2004) (treating a judge's decision to hold over the plaintiff for trial as

---

[7] Perhaps the June Order allowed Laphan to remove the vehicles and seek reimbursement from Burgy for the cost of removal. But nowhere in the record does Laphan indicate that this was why she was withholding the vehicles. Rather, she recalled telling Sergeant Haines that she would not turn over the vehicles until Burgy returned her property and the insurance check. *See* Laphan Dep. at 63. Thus, a reasonable officer considering the facts before Sergeant Haines could have concluded that she was withholding the vehicles for an impermissible reason under the June Order.

"weighty evidence" in a federal malicious prosecution case); *Brooks v. Carrion*, No. 96-1172, 1996 WL 563897, at *4 (E.D. Pa. Sept. 26, 1996) (recognizing, in a false arrest claim, that a neutral magistrate's probable-cause finding at a hold-over proceeding raises a rebuttable "presumption" of probable cause); *Cosmas v. Bloomingdales Bros., Inc.*, 660 A.2d 83, 87 (Pa. Super. Ct. 1995) (noting, in a state-law malicious prosecution case, that an unimpeached hold-over proceeding "will constitute very weighty evidence" of probable cause).[8]

Thus, the June Order does not create a genuine issue of material fact as to whether probable cause to arrest Laphan was lacking. In light of Laphan's refusal to return the vehicles, a reasonable officer could have concluded that Laphan had committed the crimes of theft and receiving stolen property—i.e., that she had "unlawfully take[n]" Burgy's vehicle "with intent to deprive him thereof" and that she "intentionally . . . retain[ed]" the vehicles "knowing that [they] had been] stolen." *See* 18 Pa. C.S. §§ 3921(a), 3925(a).[9] Because there was probable cause to arrest and prosecute Laphan on at least two of the offenses for which she was charged, she

---

[8] The fact that Laphan was later acquitted is not relevant to the probable cause determination. *See Halsey v. Pfeiffer*, 750 F.3d 273, 299 (3d Cir. 2014) ("It is . . . irrelevant in a probable cause inquiry whether a person is later acquitted of the crime for which she or he was arrested." (internal quotation marks omitted)). This is because the "evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Id.* (internal quotation marks omitted).

[9] Arguably, the Officers lacked probable cause to arrest Laphan for unauthorized use of a vehicle. Under 18 Pa. C.S. § 3928, an individual is guilty of unauthorized use of an automobile "if he operates the automobile without consent of the owner." The Pennsylvania Superior Court has held that § 3928 "requires proof of use, more than the showing of possession necessary to sustain a conviction" for receiving stolen property. *See Commonwealth v. Pemberth*, 489 A.2d 235, 236 (Pa. Super. 1985). The Superior Court specifically noted that "a person can steal a car without operating it," such as by pushing or towing it. *Id.* These actions, the Court concluded, may sustain a conviction for theft by unlawful taking, but not for unauthorized use.

There is nothing in the record to suggest that, based on the facts available to the Officers, they had a reasonable belief that Laphan "operated" either of Burgy's vehicles. Notably, she told the Officers that she had the cars towed to a storage facility, where she was safeguarding them. *See* Verdict, ECF No. 40, Ex. B. Because the Officers had probable cause to arrest and prosecute Laphan for theft and receiving stolen property, however, the lack of probable cause on the unauthorized use count is immaterial.

cannot prevail on her Fourth Amendment false arrest claim, her Fourth Amendment malicious

prosecution claim, or her state-law malicious prosecution claim. *See Wright v. City of*

*Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005) (stating that the existence of probable cause as to

one charge barred the plaintiff's malicious prosecution claim entirely)[10]; *Edwards v. City of*

*Philadelphia*, 860 F.2d 568, 576 (3d Cir. 1988) (finding that "[t]he existence of probable cause"

on one offense "defeats [the plaintiff's] claim of false arrest—even if there was insufficient cause

to arrest" for other offenses); *McIntosh v. Crist*, No. 13-103, 2015 WL 418982, at *12 (W.D. Pa.

Feb. 2, 2015) (collecting cases supporting the proposition that "if probable cause is present as to

any one count, a defendant charged on multiple counts cannot state a [Pennsylvania common

law] claim for malicious prosecution" (alteration in original) (internal quotation marks omitted)).

　　　The Officers are therefore entitled to summary judgment on these three causes of action.

---

[10] In *Wright*, the Third Circuit held that probable cause for one offense "disposes of [a plaintiff's] malicious prosecution claims with respect to all of the charges brought against her." 409 F.3d at 604. In *Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007), however, the Third Circuit held that probable cause for one charge did not bar a malicious prosecution claim with respect to other charges filed against the plaintiff. However, *Johnson* does not apply to Laphan's case for two reasons. First, the *Johnson* court recognized that the rule announced in *Wright* is still good law and applies in situations similar to Laphan's—namely where "a defendant police officer merely prepared an affidavit of probable cause" and the police officers' "involvement . . . ended at the time of the arrest." *Johnson*, 477 F.3d at 84 (internal quotation marks omitted); *see also id.* at 84-85 (observing that, in contrast to the facts in *Wright*, the defendant's involvement extended beyond the plaintiff's arrest and involved intentional misrepresentations).

Second, as the en banc Third Circuit has since stated, to the extent that *Johnson* and *Wright* are in conflict, "if one of those two cases must control for purposes of analyzing the probable cause element, it would be *Wright*, not *Johnson*, that controls." *Kossler v. Crisanti*, 564 F.3d 181, 194 n.8 (3d Cir. 2009) (en banc). Courts in the circuit have generally looked to *Wright* when analyzing the probable cause element of a malicious prosecution claim. *See Kinsler v. City of Philadelphia*, No. 13-6412, 2015 WL 3970899, at *6 (E.D. Pa. June 29, 2015) (collecting cases); *see also McIntosh v. Crist*, No. 13-103, 2015 WL 418982, at *6 (W.D. Pa. Feb. 2, 2015). Thus, *Wright*, and not *Johnson*, governs Laphan's Fourth Amendment malicious prosecution claim.

B.  Conspiracy Claims

The Officers are also entitled to summary judgment on Laphan's federal and state

conspiracy claims. To establish a conspiracy claim under § 1983, "a plaintiff must establish (1)

the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in

furtherance of the conspiracy by a party to the conspiracy." *Rosembert v. Borough of East

Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (internal quotation marks omitted); *see also

Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1990). In the absence of any

deprivation of her federal civil rights, Laphan cannot establish an essential element of a federal

conspiracy claim.

Similarly, civil conspiracy under Pennsylvania law requires a showing "that two or more

persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by

unlawful means." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). The

Pennsylvania courts have held that, "absent a civil cause of action for a particular act, there can

be no cause of action for civil conspiracy to commit that act." *Pelagatti v. Cohen*, 536 A.2d

1337, 1342 (Pa. Super Ct. 1987) (internal quotation marks omitted); *see McKeeman v.

Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super Ct. 2000); *Gordon v. Lancaster

Osteopathic Hosp. Ass'n*, 489 A.2d 1364, 1371 (Pa. Super Ct. 1985). Thus, because Laphan's

federal and state civil rights claims lack merit, her state conspiracy claim is not viable.

C.  Intentional Infliction of Emotional Distress Claim

For a plaintiff to establish a claim for intentional infliction of emotional distress, she must

demonstrate that the defendant's conduct was (1) extreme and outrageous; (2) intentional or

reckless; and (3) caused severe emotional distress. *See Hoy v. Angelone*, 691 A.2d 476, 482 (Pa.

Super. Ct. 1997). The standard for outrageousness is high; a defendant's conduct "must be so

outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency." *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987); *see also Hoy*, 720 A.2d at 754 (surveying Pennsylvania caselaw and concluding that "[c]ases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have . . . presented only the most egregious conduct").

The Officers committed no constitutional violation in arresting and prosecuting Laphan. Because their conduct was not unlawful—let alone extreme or outrageous—they are entitled to summary judgment on Laphan's intentional infliction of emotional distress claim. *See Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Cmmw. Ct. 2010) ("Police officers doing their job by arresting people when they have probable cause to do so certainly falls far short of extreme or outrageous conduct.").

D. *Monell* Claim

Finally, Upper Providence Township is entitled to summary judgment on Laphan's *Monell* claim because "without an underlying constitutional violation, there can be no *Monell* claim." *Knellinger v. York Street Property Development LP*, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized [unconstitutional action] is quite beside the point.").

IV.    **CONCLUSION**

Laphan stakes her federal and state-law false arrest and malicious prosecution claims on the June Order. That Order, however, does not create a genuine issue of material fact as to the existence of probable cause. Even taking the June Order into consideration, the Officers had

probable cause to arrest and prosecute Laphan for theft and receiving stolen property.[11] As such, Laphan's Fourth Amendment false arrest and malicious prosecution claims, and her state-law malicious prosecution claim, lack merit. In the absence of any constitutional violation, Laphan's conspiracy, *Monell*, and intentional infliction of emotional distress claims also fail. Thus, the Officers and Upper Providence Township are entitled to summary judgment on all claims against them.


s/Anita B. Brody

_____

ANITA B. BRODY, J.



Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to:

---

[11] Even though there was probable cause to file criminal charges against Laphan, this does not mean that such charges *should* have been pursued as an exercise of prosecutorial discretion. In Pennsylvania, a prosecutor "is both an administrator of justice and an advocate; he must exercise sound discretion in the performance of his functions . . . to seek justice, not merely to convict." *Commonwealth v. Collins*, 341 A.2d 492, 498 (Pa. 1975) (internal quotation marks omitted). As the magisterial judge observed, in this case, criminal prosecution was "a blunt instrument to try to deal with [a] domestic situation." Tr. of Preliminary Hr'g at 26-27. Although their actions were legal, it is nevertheless regrettable that the DA's Office chose to file criminal charges against Laphan rather than seeking resolution of this domestic dispute through more amicable means.